UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FOREFRONT DERMATOLOGY, S.C.,

        Plaintiff,

vs.

SHENARA AUSTIN SEXTON,

        Defendant.

Case No.

# COMPLAINT

Plaintiff Forefront Dermatology, S.C., by and through its attorneys, Michael Best & Friedrich LLP, alleges as follows against Defendant Shenara Austin Sexton:

## THE PARTIES

1. Plaintiff Forefront Dermatology, S.C. ("Forefront") is a Wisconsin service corporation with its principal place of business at 801 York Street, Manitowoc, WI 54220.

2. Defendant Shenara Austin Sexton ("Sexton" or "Physician") is an individual and citizen of the state of Georgia who, upon information and belief, resides at 4143 Randall Court NW, Atlanta, GA 30327.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4. This Court has personal jurisdiction over Sexton pursuant to the consent to the venue and personal jurisdiction provision in the June 21, 2021 Employment Agreement. (Ex. 1 at 14, § 9.6). Specifically, Sexton contracted that "the non-exclusive forum for any litigation relating to this Agreement will be in the federal courts of the Eastern District of Wisconsin or the

Circuit Court of Manitowoc County in Wisconsin and hereby expressly consent to the jurisdiction of such courts. The Parties agree that any such court has personal jurisdiction, and each Party waives any defense to any such court having personal jurisdiction." (*Id*.).

5. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

6. Forefront is a leading dermatology group practice with numerous locations throughout the United States.

7. Sexton is a board-certified dermatologist with over 15-years of experience.

8. On June 21, 2021, Forefront and Sexton entered into the Employment Agreement. The Employment Agreement is signed by Forefront and Sexton. Attached as **Exhibit 1** is a true and correct copy of the Employment Agreement.

9. On November 22, 2021, Forefront and Sexton entered into the Amendment Number One to the Employment Agreement ("Amendment"). The Amendment is signed by Forefront and Sexton. Attached as **Exhibit 2** is a true and correct copy of the Amendment. The Employment Agreement and the Amendment are hereinafter collectively referred to as the "Agreement."

10. Pursuant to section 2.A. of the Amendment, "This Agreement has an Initial Term of three (3) years commencing on October 25, 2021, and ending October 24, 2024, unless earlier terminated by either Party under Section V of the Agreement. Each Term thereafter will be for a period of two (2) years."

11. Pursuant to Exhibit A of the Employment Agreement, "Physician's primary practice location will be Forefront's clinic located at 5505 Peachtree Dunwoody Road, Suite 412, Atlanta, Georgia" (hereinafter "Practice Location").

12. Pursuant to section 3.1 of the Employment Agreement and Exhibit A to the Employment Agreement, Sexton's Base Salary/Draw was as follows:

> For all services rendered by Physician pursuant to this Agreement during the first two years of Physician's Initial Term, **Forefront will pay Physician an annual base salary of $275,000** (referred to herein as "Base Salary"), which will count against Physician's annual Collections Bonus, and will be paid on a pro-rata basis in accordance with Forefront's normal and customary payroll practices that are in effect from time to time. Physician's Base Salary will be pro-rated on a daily basis for any period of service at the inception or termination of Physician's employment with Forefront that is less than a full payment period. Commencing with year three of Physician's Initial Term, and each subsequent year thereafter of Physician's employment, Forefront will pay Physician a draw of $275,000 per year (referred to herein as "Draw"), which will count against Physician's annual Collections, and will be paid on a pro-rata basis in accordance with Forefront's normal and customary payroll practices that are in effect from time to time.

(*Id*) (emphasis added).

13. Pursuant to section 3.1 of the Employment Agreement and Exhibit A to the Employment Agreement, Sexton received a Sign-On and Retention Bonus of $82,500.

14. Pursuant to section 5.1.1 of the Employment Agreement, Sexton was only permitted to unilaterally terminate with an effective termination date at the end of the Initial Term:

> By either Party, by providing written notice to the other Party at least 90 days prior to the end of the Initial Term or Renewal Term, **with an effective termination date at the end of the Initial Term** or Renewal Term (for purposes of clarification, **this does not create the right to terminate the Initial Term or Renewal Term at any time with notice, termination is only effective at the end of the Initial Term** or Renewal Term). In the event of termination pursuant to the above notice requirements, Forefront may elect in its sole discretion to pay Physician for the period through the end of the Initial Term or Renewal Term and require that Physician no longer provide services or appear for work, but with Physician's employment otherwise continuing through the period after such written notice through the end of the Initial Term or Renewal Term.

(*Id*) (emphasis added).

15. Pursuant to section 5.2 of the Employment Agreement, Sexton agreed as follows:

> <u>Failure to Provide Adequate Notice of Termination and Effect on Patient Care</u>. Physician acknowledges and understands that should Physician fail to fulfill the obligations to provide services hereunder, it would be difficult for Forefront to assure uninterrupted service of medical care to patients. Furthermore, Physician agrees that the process of finding a qualified replacement who can provide the necessary continuity of care to the affected patients takes a significant amount of time and resources to (i) identify suitable Physicians who may be interested in the position, (ii) interview and negotiate with such candidates, and (iii) obtain the necessary licensing, contracting and credentialing in order for such replacement Physician to be able to provide services to patients and to bill and collect for such care. **As a result, the Parties agree that if Physician terminates his/her employment prior to the end of the Initial Term** or any Renewal Term, or if Physician decides not to renew this Agreement's Term pursuant to <u>Section 5.1.1</u> but fails to provide the required prior written notice, **Forefront will suffer damages that are difficult or impossible to ascertain, including, potential interruption of patient care and patients who choose to leave the practice**.
>
> **As a result, in the event that Physician terminates his/her employment prior to the end of the Initial Term or any Renewal Term**, or if Physician decides not to renew this Agreement's Term pursuant to <u>Section 5.1.1</u>, but fails to provide the required prior written notice, **Physician agrees to pay as liquidated damages, and not as a penalty, $2,500 for every day (a) between the last day of Physician's employment and the last day of the Initial Term** or Renewal Term, **if Physician terminates his/her employment prior to the end of the Initial Term** or any Renewal Term, or (b) that is less than the 90 days required pursuant to <u>Section 5.1.1</u>, if the Physician chooses not to renew this Agreement's Term but fails to provide the required notice. **Physician acknowledges that, if Physician terminates employment prior to the end of the Initial Term** or Renewal Term or fails to provide the required notice set forth in <u>Section 5.1.1</u> in violation of this Agreement, **Physician will not be entitled to any compensation for the period through the end of the Initial Term** or Renewal Term **other than Physician's Base Salary through the last day worked**.

(*Id*) (emphasis added).

16. At the time the parties entered into the Employment Agreement, it was difficult to calculate the full extent of the injury to Forefront that would be caused by Sexton's termination of her Employment Agreement prior to the end of the Initial Term.

4

17. At the time of entering the Employment Agreement, Forefront and Sexton agreed to provide for damages rather than a penalty in the event of Sexton's unilateral early termination, as expressly stated in the Employment Agreement.

18. The sum stipulated upon by the parties in the Employment Agreement is a reasonable pre-estimate of Forefront's probable loss.

19. On or around August 18, 2023, Sexton informed Forefront that she would not complete the Initial Term of the Agreement. Sexton requested a mutual agreement to terminate the Agreement.

20. Forefront attempted to mitigate its damages and work with Sexton to find a solution that had a less severe effect on patient care. Sexton, however, failed to agree to Forefront's proposal to ensure minimal negative effects on patient care and damage to Forefront.

21. On August 25, 2023, Sexton, through counsel, contacted Forefront to "discuss her planned departure from the practice."

22. On August 31, 2023, Sexton sent Forefront a Notice of Resignation effective December 1, 2023 (hereinafter "Sexton's Notice of Resignation"). Attached as **Exhibit 3** is a true and correct copy of the Sexton Notice of Resignation. The Sexton Notice of Resignation states, in relevant part:

> **I am writing to give notice of my resignation, effective December 1, 2023**. As we discussed, my family will be leaving Georgia and relocating out of state. **As of August 14th, 2023, my husband started a new position in Illinois. My son and husband have already made the move** in order to provide my son a smooth transition to a new home and school prior to the beginning of the school year. As I am a part-time employee and my spouse is the primary breadwinner I feel it is necessary to make the decision to relocate as well. . . .
>
> I have delayed my move to avoid interruption in patient care and disruption to co-workers and staff. **Today's email gives more than 90-days advance notice of my last day. . . . This should be a sufficient transition period** to allow Forefront to prepare for my replacement.

> Despite my good faith and best efforts to reach a compromise with Forefront, **you have indicated that you will not mutually agree to end my contract early** and have threatened me with significant financial penalties if I leave early . . . **It is regrettable that we were not able to reach an amicable compromise**, but my family must take priority . . . .

(Ex. 3) (emphasis added).

23. Sexton has also instructed Forefront not to schedule any patients for her to be seen at the Practice Location after November 29, 2023.

24. Sexton's anticipated material breaches of the Agreement has caused and will cause Forefront significant damages. Forefront will be unable to see all patients at the Practice Location and will lose revenue daily as a result of her material breaches. Forefront will be unable to provide uninterrupted service of medical care to patients or be forced to pay significant fees for locum tenens coverage to provide those services. Also, the process of finding a qualified replacement who can provide the necessary continuity of care to affected patients has taken and will take a significant amount of time and resources, including interviews, negotiations, obtaining a Georgia medical license, and enroll the dermatologist with payors.

25. Additionally, through Sexton's Notice of Resignation, Forefront learned that Sexton knew of her planned departure prior to the time she told Forefront. Indeed, in Sexton's Notice of Resignation, which was dated August 31, 2023, she stated, "[a]s of August 14th, 2023, my husband started a new position in Illinois. **My son and husband have already made the move** . . . ." (Ex. 3) (emphasis added). Notably Sexton did not inform Forefront of her intent to terminate her employment until mid-August 2023, after her husband and son had already moved from Georgia to Illinois.

# CAUSES OF ACTION

## Claim I
## Breach of Contract

26. Forefront realleges and incorporates by reference all paragraphs above.

27. A valid and enforceable contract exists between Forefront and Sexton comprised of the Employment Agreement and Amendment, which together is the parties' Agreement.

28. Pursuant to the Agreement, section 2. A. of the Amendment, Sexton agreed to work for an Initial Term of three (3) years commencing October 25, 2021 and ending October 24, 2024.

29. Pursuant to the Agreement, section 5.2 of the Employment Agreement, Sexton agreed to liquidated damages of $2,500 for every day between the last day of Physician's employment and the last day of the Initial Term if Physician terminates her employment prior to the end of the Initial Term.

30. On August 31, 2023, Sexton provided Forefront with Sexton's Notice of Resignation that she would be materially breaching the Initial Term and terminating her Agreement with Forefront as of December 1, 2023. In her Notice of Resignation, Sexton made a definite and unequivocal manifestation that she will not perform past December 1, 2023.

31. Sexton's Notice of Resignation as of December 1, 2023 and informing Forefront not to schedule patients past November 29, 2023 was an anticipatory repudiation of the Agreement and demonstrated her absolute refusal to perform under the Agreement from December 1, 2023 to the October 24, 2024 end of her Initial Term under the Agreement.

32. Sexton's Notice of Resignation is a breach of and does not comply with section 5.1.1 of the Agreement.

7

33. As a result of Seton's anticipatory material breaches of the Agreement, Forefront is entitled to liquidated damages under section 5.2 totaling $2,500 for every day between the last day of Physician's employment and the last day of the Initial Term. Sexton's last day of employment with Forefront will be December 1, 2023. The last day of the Initial Term is October 24, 2024. There are 328 days from December 1, 2023 to October 24, 2024. Forefront is therefore entitled to $820,000.00 in liquidated damages under the Agreement (328 days x $2,500 per day).

34. Alternatively, Forefront is entitled to its actual damages, including all compensatory and consequential damages resulting from Sexton's anticipatory material breaches of the Agreement, which will include the expense of finding a qualified replacement who can provide the necessary continuity of care to affected patients, the expense of locum tenens doctors (substitute doctors), lost revenue, and other costs, expenses, and damages.

## Claim II
## Breach of the Duty of Good Faith and Fair Dealing

35. Forefront realleges and incorporates by reference all paragraphs above.

36. Sexton had an obligation to use good faith to provide medical care in her specialty to Forefront's patients at the Practice Location for the Initial Term of October 25, 2021 to October 24, 2024, as stated throughout the Agreement, and specifically sections 1.1, 1.2, 1.3, 4.3, 5.2 of the Employment Agreement, Exhibit A to the Employment Agreement, and section 2.A. of the Amendment.

37. As to these terms, and others, Sexton breached her good faith obligation by terminating her employment early, her anticipatory breach of failing to show up to the Practice Location, her anticipatory breach of failing to work through the end of the Initial Term, her anticipatory breach of failing to provide medical care in her specialty to Forefront's patients at

the Practice Location, and failing to timely inform Forefront of her anticipatory repudiation of the Agreement, instead waiting until after her family had already moved from Georgia to Illinois to tell Forefront.

38. Sexton's actions and breaches of the duty of good faith and fair dealing had the effect of injuring and destroying the rights and ability of Forefront to receive the benefits of the Agreement.

39. No course of action was available to Forefront that could have avoided the harm caused by Sexton's breaches of the duty of good faith and fair dealing.

**WHEREFORE**, Plaintiff, Forefront Dermatology, S.C., requests judgment in their favor and against Defendant Shenara Austin Sexton as follows:

- A. Awarding Forefront $820,000.00 in liquidated damages against Sexton under the Agreement;

- B. Alternatively, awarding Forefront all of its actual, compensatory and consequential damages against Sexton resulting from her breach of the Agreement;

- C. Awarding Forefront all of its actual, compensatory and consequential damages for Sexton's breach of the duty of good faith and fair dealing;

- D. Awarding Forefront its costs and attorneys' fees; and

- E. Awarding Forefront all other relief the Court deems equitable and just.

Dated: October 10, 2023.	**MICHAEL BEST & FRIEDRICH LLP**

By:	s/Adam E. Witkov
Adam E. Witkov, WI Bar No. 1066529
Eric H. Rumbaugh, WI Bar No. 1015164
790 North Water Street, Suite 2500
Milwaukee, WI 53202
Telephone: 414.271.6560
Facsimile: 414.277.0656
Email: aewitkov@michaelbest.com
Email: ehrumbaugh@michaelbest.com

*Attorneys For Plaintiff Forefront Dermatology, S.C.*